UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIRGINIA EGAN,                                    **COMPLAINT**

               Plaintiff,            Civil Action No. 1:17-CV-1172 (TJM/CFH)

      v.

VISITING NURSE SERVICE ASSOCIATION OF
SCHENECTADY COUNTY d/b/a VISITING NURSE SERVICE OF
NORTHEASTERN NEW YORK,

               Defendant.

_____

       Plaintiff Virginia Egan, by and through her attorneys D'Orazio Peterson LLP, as and for

her Complaint against Defendant Visiting Nurse Service Association of Schenectady County

d/b/a Visiting Nurse Service of Northeastern New York alleges as follows:

### NATURE OF ACTION

   1.  Plaintiff Virginia Egan ("Plaintiff") brings this action against her former employer

Defendant Visiting Nurse Service Association of Schenectady County d/b/a Visiting Nurse

Service of Northeastern New York ("Defendant" or "VNS") for discrimination and retaliation in

violation of the Americans with Disabilities Act ("ADA"), as amended (42 U.S.C. § 12101, et

seq.) and the New York State Human Rights Law ("NYHRL"), New York Executive Law § 290,

et. seq.

### JURISDICTION

   2.  This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. §§

12117, 2000e-5 and 28 U.S.C. §§ 1331, 1367.

### PARTIES

   3.  Plaintiff is an individual residing in Niskayuna, Schenectady County, State of New York.

4.   Upon information and belief, Defendant Visiting Nurse Service Association of Schenectady County is a domestic not-for-profit corporation, organized and existing under the laws of the State of New York, with a principal place of business in Schenectady County, New York.  Respondent is the owner and operator of Visiting Nurse Service of Northeastern New York (hereinafter collectively referred to as "Defendant" or "VNS").

## VENUE

5.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim occurred in Schenectady County, New York which is located within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.   Plaintiff filed a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about March 13, 2017.

7.   Plaintiff received a Notice of Right to Sue from the EEOC dated July 25, 2017.  This action is being filed within 90 days of that date.

## FACTS

8.   Plaintiff was hired by VNS as a Central Intake Supervisor on or about June 13, 2016, and remained employed until her termination on December 13, 2016.  Other than the actions Plaintiff alleges were taken for discriminatory reasons, Plaintiff had a positive performance history and was qualified and able to perform the functions of her position with a reasonable accommodation of her disability.

9.   Plaintiff suffers from disabilities including multiple bulging herniated discs with nerve impingement and long-term hip, elbow and shoulder injuries stemming from an automobile accident, as well as difficulty breathing.

10. These disabilities limit Plaintiff 's major life activities insofar as she is substantially limited in her ability to walk beyond short distances, walk upstairs, and sit or stand for longer than short intervals, requiring her to alternate between positions, and has difficulty breathing.  Plaintiff is also substantially limited in the major bodily function of respiration, having a record of poor pulmonary function tests, and she experiences shortness of breath with low oxygen saturation with minimal exertion.  Plaintiff also suffers from dysphagia with swallowing deficiencies, pain, weakness, severe back and neck spasms, limited mobility of the extremity joints, and nerve conduction issues.

11. As a result of her disabilities, Plaintiff required a reasonable accommodation of intermittent leave to allow her to attend medical appointments and to take breaks so that she would not be sitting or standing for significant periods at a time, and which would not interfere in the performance or completion of her job duties.

12. Plaintiff was able to perform the essential functions of her position with these reasonable accommodations and, at all times relevant, was performing the functions of her position in a satisfactory manner and often exceeded the number of hours in a regular work week notwithstanding her medical appointments.  The nature of Plaintiff's position allowed her to handle many issues over the telephone and Plaintiff remained accessible even when out of the office.

13. Upon her employment with Defendant, Plaintiff disclosed and Defendant had knowledge of her physical limitations arising from her disability which included the inability to engage in direct patient care.  Direct patient care was not a function, essential or otherwise, of the position for which Plaintiff was hired.

14. Shortly after being hired, Plaintiff requested a reasonable accommodation of intermittent leave to allow her to attend medical appointments and discussed same with her Director, Kathleen Paul.  Plaintiff otherwise kept Ms. Paul apprised of her medical condition and limitations.

15. Plaintiff 's request for a reasonable accommodation was a protected activity.

16. Although Plaintiff did begin periodically taking time off for her medical appointments, she routinely exceeded forty hours per week of work during the tenure of her employment, and accrued additional unused leave time.

17. Plaintiff did not receive any job performance counseling or negative performance reviews between the date of her hire and December 12, 2016.  In fact, because of her positive performance, Plaintiff was assigned additional tasks well beyond those for which she was hired.  At the end of 2016, Plaintiff was performing the work of three positions.

18. On December 13, 2016, Plaintiff met with Director Paul to discuss the three departments that Plaintiff was managing at that time.  During the meeting, Plaintiff complained that she was having difficulty managing her disability because she was performing work significantly beyond the scope of the position for which Plaintiff was originally hired.

19. The complaints made by Plaintiff at the December 13, 2016 meeting constituted protected activity.

20. At this point, after Defendant was on notice of Plaintiff 's disability, her need for leave, and her actual taking of leave, Defendant began to accuse Plaintiff of having attendance problems.

21. For example, in response to the complaints during the December 13 meeting, Plaintiff's Director stated that Plaintiff had been "having too many medical appointments lately," and that it was "not okay."

22. At the time that she made the complaint, however, Plaintiff had accrued, unused hours of paid time off remaining; was meeting her job obligations; was performing the work of three positions; and was routinely exceeding the number of hours in a regular work week.

23. At this meeting, Plaintiff specifically raised her need for an accommodation of her disability. In addition to attending medical appointments, Plaintiff also raised her inability to stand for long periods at a time and the need for intermittent breaks that would not interfere with the performance and completion of her work duties.

24. Defendant's director, however, made a statement to the effect that Defendant did not plan to "go down the disability route", meaning that Defendant did not want to further formalize Plaintiff's requests or continue with the required interactive process to accommodate her disability.

25. Following and in immediate temporal proximity to her complaints and reiteration of her need for a reasonable accommodation, at the end of the day on December 13, 2016, Plaintiff was advised that she was being terminated due to her position being eliminated.

26. Prior to being advised that she was being terminated, Plaintiff was never told, nor was it suggested, that there had been any consideration of eliminating her position.

27. It would have been impracticable for Defendant to eliminate Plaintiff's position, as it stated upon her termination, because Plaintiff had a significant workload and was performing duties in addition to and beyond her position of Central Intake Supervisor.

28. Upon information and belief, Defendant did not actually eliminate Plaintiff's position and, instead, hired a replacement Central Intake Supervisor by the name of Dametress Haughton, who was less qualified as compared to Plaintiff, including because she was an LPN and not an RN, and who did not have a disability or need for an accommodation.

29. When Defendant terminated Plaintiff and/or raised issues of attendance in response to Plaintiff's complaint, Defendant took absences for Plaintiff's disability into consideration.

30. When Defendant terminated Plaintiff, its decision was based upon Plaintiff's request for a reasonable accommodation and Defendant's unwillingness to consider or formalize that request.

31. Under the ADA and the NYHRL, Defendant was required to engage in an interactive process with Plaintiff in order to address and accommodate her disability; was prohibited from discriminating against Plaintiff on the basis of her disability and protected disability-related medical appointments; and was prohibited from retaliating against Plaintiff for requesting a reasonable accommodation and making complaints.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Discrimination and Failure to Accommodate in Violation of the ADA)**

32. Plaintiff repeats and realleges each of the preceding paragraphs as if more fully set forth herein.

33. Plaintiff suffers from disabilities within the meaning of the ADA, as amended.

34. Under the ADA, Defendant was required to engage in an interactive process with Plaintiff in order to address and accommodate her disability; was prohibited from discriminating against Plaintiff on the basis of her disability; and was prohibited from retaliating against Plaintiff for requesting reasonable accommodations and for complaining of unfair and illegal treatment.

35. Defendant here discriminated against Plaintiff because of her disabilities when it failed to engage in an interactive process in order to determine a reasonable accommodation of her disability; when it took absences related to her disability into consideration when it terminated her employment; when it failed to accommodate Plaintiff's disability; when it expressed animus towards Plaintiff's disabilities and need for an accommodation; when it terminated her employment because of her disability and need for an accommodation; and when it replaced Plaintiff with a less qualified employee without a disability.

36. Defendant willfully violated the ADA when it knew, or acted with reckless disregard of the fact, that its conduct violated the law.

37. As a result of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost accrued sick and vacation time, lost benefits including retirement and health benefits and compensatory damages, including damages for emotional distress and mental anguish, together with the costs and attorneys' fees of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of the ADA)

38. Plaintiff repeats and realleges each of the foregoing paragraphs as if more fully set forth herein.

39. Plaintiff engaged in protected activity when she requested a reasonable accommodation and complained that she was being prevented from managing her disability as a result of a workload that exceeded the scope of the position for which she was hired.

40. Defendant retaliated against Plaintiff when it terminated her employment upon Plaintiff's renewed requests for an accommodation and complaints that her increased workload did not permit her to adequately manage her disability.

41. Defendant expressed animus towards Plaintiff's request for an accommodation in the December 13, 2016 meeting.

42. Defendant willfully violated the ADA when it knew, or acted with reckless disregard of the fact, that its conduct violated the law.

43. As a result of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost accrued sick and vacation time, lost benefits including retirement and health benefits and compensatory damages, including damages for emotional distress and mental anguish, together with the costs and attorneys' fees of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination/Failure to Accommodate in Violation of the New York State Human Rights Law)

44. Plaintiff repeats and realleges each of the foregoing paragraphs as if more fully set forth herein.

45. Plaintiff suffers from disabilities within the meaning of the New York State Human Rights Law ("NYHRL").

46. Defendant violated the NYHRL when it failed to engage in an interactive process in order to determine a reasonable accommodation of Plaintiff's disability; when it took absences related to her disability in consideration when it terminated her employment; when it failed to accommodate Plaintiff's disability; when it expressed animus towards Plaintiff's disabilities and need for an accommodation; when it terminated her employment because of her disability and request for accommodations; and when it replaced Plaintiff with a less qualified employee without a disability.

47. As a result of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost accrued sick and vacation time, lost overtime, lost benefits including retirement and health benefits and compensatory damages, including damages for emotional distress and mental anguish.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the New York State Human Rights Law)

48. Plaintiff repeats and realleges each of the foregoing paragraphs as if more fully set forth herein.

49. Plaintiff engaged in protected activity when she complained that she was being prevented from managing her disability as a result of a workload that exceeded the scope of the position for which she was hired.

50. Defendant retaliated against Plaintiff when it terminated her employment upon Plaintiff's complaints that her increased workload did not permit her to adequately manage her disability.

51. As a result of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost accrued sick and vacation time, lost overtime, lost benefits including retirement and health benefits and compensatory damages, including damages for emotional distress and mental anguish.

## **JURY DEMAND**

52. Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff demands Judgment against Defendant as follows;

(A) Declaring that Defendant's actions are in violation of the ADA and the NYHRL; and

(B) On the first cause of action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorneys' fees; and

(C) On the second cause of action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorneys' fees; and

(D) On the third cause of action, monetary damages in an amount to be determined at trial; and

(E) On the fourth cause of action, monetary damages in an amount to be determined at trial; together with

(F) Such other legal and equitable relief as the Court deems appropriate under the circumstances and which is available by law or statute.


Dated: October 19, 2017
       Saratoga Springs, New York

                          D'ORAZIO PETERSON LLP

                      By: */s/ Giovanna A. D'Orazio*
                           Giovanna A. D'Orazio
                           Bar Roll #515574
                           Scott M. Peterson, Esq.
                           Bar Roll #513186
                           125 High Rock Avenue
                           Saratoga Springs, NY 12866
                           (tel) 518-308-8339
                           (fax) 518-633-5106
                           (email) gad@doraziopeterson.com
                                  smp@doraziopeterson.com